UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| TRACY WAYNE VICKERS, ) <br> ) <br> Plaintiff, ) <br> vs. ) <br> ) <br> HENRY GODECKI, *et al.*, ) <br> ) <br> Defendants. ) <br> ) | Case No.: 2:20-cv-01401-GMN-NJK <br><br> **ORDER** |

Pending before the Court is a Motion to Dismiss, (ECF No. 14), filed by Defendants Henry Godecki, Renee Baker, Tara Carpenter, Pamela Del Porto, Harold J. Wickham, Barbara Cegavske, Charles Daniels, Stephen Sisolak, Aaron Ford, and John/Jane Does 1-10 (collectively, "Defendants"). Plaintiff Tracy Vickers ("Plaintiff") filed a Response, (ECF No. 15), to the Motion, and Defendants filed a Reply, (ECF No. 18).

For the reasons discussed below, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion to Dismiss.

**I.    BACKGROUND**

This case arises from a confrontation between Plaintiff and another inmate, Scott Kelley, while Plaintiff was incarcerated at Lovelock Correctional Center ("LCC"). (Compl. ¶¶ 13, 27, ECF No. 1). On August 10, 2017, a verbal confrontation took place between Plaintiff and Kelley, inside the Building 8 Unit. (*Id*. ¶ 28). At some point, Kelley walked away from the confrontation and returned with a baseball bat he allegedly retrieved from inside an unsecured storage unit inside Building 8. (*Id*. ¶ 29). Kelley then struck Plaintiff in the chest and abdominal area with the baseball bat. (*Id.* ¶¶ 28–31). After reporting the attack to Defendant Godecki and an unknown officer, Plaintiff spent approximately one day at Renown Medical Center in Reno, Nevada. (*Id.* ¶¶ 33–34).

Plaintiff filed an administrative grievance to complain that Kelley should not have had unrestricted access to the baseball bat. (*Id.* ¶ 41). He alleges Defendants knew inmates could use a bat as a deadly weapon and that inmates would sometimes act violently towards each other. (*Id.* ¶¶ 45–46). Defendants Carpenter, an associate warden at LCC, and Del Porto, an investigator for the Inspector General's Office, later told Plaintiff that the bat did not have to be secured because it was considered recreational equipment situated in a minimum custody facility. (*Id.* ¶ 42). According to Plaintiff, Defendants Cegavske, Wickham, Baker, Daniels, Sisolak, and Ford promulgated a policy of not monitoring and securing equipment, such as baseball bats, at minimum custody facilities (the "Policy"). (*Id.* ¶ 43).

In response to these incidents, Plaintiff filed his Complaint alleging six causes of action: (1) violation of Article 1 § 6 of the Nevada Constitution; (2) violation of the Fourteenth Amendment to the U.S. Constitution, specifically under the Equal Protection Clause; (3) violation of the Eighth Amendment of the U.S. Constitution, specifically for deliberate indifference; (4) negligence; (5) negligent hiring, training, selection, and supervision; and (6) gross negligence. (*Id.* ¶¶ 52–73). Defendants filed the instant motion, seeking dismissal of Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (*See generally* Mot. Dismiss ("MTD"), ECF No. 14).

## II.     LEGAL STANDARD

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). "However, material which is properly submitted as part of the complaint may be considered." *Id.* Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). On a motion to dismiss, a court may also take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if a court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. Fed. R. Civ. P. 12(d).

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

//

//

## III. DISCUSSION

Defendants move to dismiss Plaintiff's Complaint on the following grounds: (1) the Eleventh Amendment immunizes Defendants from Plaintiff's state tort claims regarding negligence, negligent hiring, training, selection and supervision, and gross negligence; (2) Defendants are entitled to qualified and discretionary immunity; (3) Plaintiff cannot show he is part of a protected class or that a policy was created within LCC with discriminatory intent or purpose; (4) 42 U.S.C. § 1983 does not provide a cause of action for claims alleging violations of state claims alone; (5) Plaintiff failed to plead sufficient facts showing Defendants failed to properly supervise or train any Nevada Department of Corrections ("NDOC") employee; and (6) Plaintiff failed to plead personal participation of the Defendants.[1] (*See generally* MTD, ECF No. 14). The Court first discusses Eleventh Amendment immunity, followed by a discussion of Plaintiff's § 1983 claims, and finally will address Plaintiff's remaining state law claims.

### A. Eleventh Amendment Immunity

The Eleventh Amendment to the U.S. Constitution immunizes states from suits by their own citizens seeking money damages. *Jackson v. Hayakawa*, 682 F.2d 1344, 1349 (9th Cir. 1982). However, a state may waive its Eleventh Amendment immunity if it consents via state statute or constitutional provision. *Montana v. Gilham*, 133 F.3d 1133, 1138 (9th Cir. 1997). In addition, supplemental jurisdiction under "28 U.S.C. § 1367 does not abrogate state sovereign immunity for supplemental state law claims." *Stanley v. Trustees of Cal. State Univ.*, 433 F.3d 1129, 1133–34 (9th Cir. 2006). Despite this, the Eleventh Amendment does not bar suits seeking damages against state officials in their individual capacity. *Pena v. Gardner*, 976 F.2d 469, 473 (9th Cir. 1992), *as amended* (Oct. 9, 1992).

---

[1] The Court declines to consider Defendants' personal participation argument because Defendants fail to identify which claim it corresponds to.

Here, Plaintiff filed his Complaint against Defendants in their official and individual capacities, except for Godecki, who Plaintiff only accuses in his individual capacity. The Complaint alleges that Defendants violated his federal and state constitutional rights against cruel and unusual punishment and his federal constitutional equal protection rights. (Compl. ¶¶ 52–61). Plaintiff also claims Defendants committed negligence, gross negligence, and negligently hired, trained, selected and supervised employees. (*Id.* ¶¶ 62–73). The Court first addresses Plaintiff's claims against Defendants in their official capacities and then turns to the claims regarding Defendants in their individual capacities.

### i. *Claims Against Public Officials in their Official Capacities*

Official capacity suits essentially constitute actions against the "entity of which an officer is an agent." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). As such, courts must treat suits against state officials in their official capacities as suits against the state. *Id.* Individual capacity suits, however, "seek to impose individual liability upon a government officer for actions taken under color of state law." *Id.* Thus, "to establish personal liability in a 42 U.S.C. § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Eleventh Amendment immunity attaches to state officials sued in their official capacities. *Jackson,* 682 F.2d at 1350.

Here, the Court does not have jurisdiction over Plaintiff's claims against Defendants in their official capacities. The Eleventh Amendment not only immunizes states, but state officials acting in their official capacities. *Jackson*, 682 F.2d at 1350. Further, the State of Nevada did not consent to be sued in federal court, thereby eliminating Plaintiff's avenue to proceed on his claims against Defendants in their official capacities. *See* NRS § 41.031(3) ("The State of Nevada does not waive its immunity from suit conferred by Amendment XI of the Constitution of the United States.").

Plaintiff attempts to claim that this Court still has supplemental jurisdiction over his official capacity claims pursuant to 28 U.S.C. § 1367. (Resp. to MTD 2:10–23, ECF No. 15). 28 U.S.C. § 1367 states that barring some exceptions, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." However, Plaintiff's claim still fails because § 1367 does not abrogate state sovereign immunity under the Eleventh Amendment. *Stanley*, 433 F.3d at 1133–34.  Thus, the Court dismisses Plaintiff's 42 U.S.C. § 1983 and state law claims against Defendants Baker, Carpenter, Cegavske, Daniels, Del Porto, Ford, Sisolak, Wickham, and John/Jane Does 1-10 in their official capacities with prejudice.

### ii. Claims Against Public Officials in their Individual Capacities

The Court now examines Plaintiff's claims against Defendants in their individual capacities.  While Plaintiff's claims fail against the named defendants in their official capacities, the individual capacity claims may proceed. *Pena*, 976 F.2d at 473.  Plaintiff's Complaint alleges constitutional violations under § 1983, as well as state law claims.  However, only violations of federal rights can be brought under § 1983.  *Galen v. Cty. of Los Angeles*, 477 F.3d 652, 662 (9th Cir. 2007).  Therefore, the Court will first turn to Plaintiff's claims under § 1983, and then proceed to an analysis of his state law claims.

### 1. 42 U.S.C. § 1983 Claims

To state a claim under § 1983, a plaintiff must allege: (1) a right secured by the Constitution or laws of the United States was violated; and (2) the alleged violation was committed by a person acting under the color of state law. *West v. Atkins,* 487 U.S. 42, 48 (1988).  A public official acts under color of state law when she acts "in the course of [her] official duties when the alleged incident occurred." *Marks v. Parra*, 785 F.2d 1419, 1420 (9th

Cir. 1986). Moreover, § 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 US 386, 393–94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

Here, Plaintiff alleges two main claims under § 1983: (1) deliberate indifference under the Eighth Amendment; and (2) equal protection under the Fourteenth Amendment. (Compl. ¶¶ 52–61). The Court will first discuss Plaintiff's deliberate indifference claim, followed by his equal protection claim.

### a. Deliberate Indifference Claim[2]

In his complaint, Plaintiff alleges Defendants Godecki and John/Jane Does 1-10 violated his Eighth Amendment right against cruel and unusual punishment by showing deliberate indifference to his health and safety. (Compl. ¶ 60). He argues that they did so by failing to remove and secure a baseball bat they knew could be used as a weapon and had no recreational purpose in Building 8 because inmates had no access to a baseball field. (*Id.* ¶ 60).

In the present Motion, Defendants claim qualified immunity shields them from liability regarding Plaintiff's deliberate indifference claim. (MTD 12:1–2). Specifically, Defendants contend that requiring prison officials to secure recreational tools stored in minimum custody facilities is not a clearly established right. (*Id.* 13:13–15). They further claim Plaintiff failed to sufficiently plead that Defendants created or enforced this policy intending to cause constitutional harm, which he must do to proceed with a deliberate indifference claim. (*Id.* 11:14–25) (citing *OSU Student All. v. Ray*, 699 F.3d 1053, 1073 n.15 (9th Cir. 2012)).

---

[2] The Court dismisses Plaintiff's claim under Article 1 § 6 of the Nevada Constitution because the parties' arguments indicate that there is a lack of clarity as to whether there can be a private cause of action for violation of rights under the Nevada Constitution, and neither the Nevada Supreme Court nor the Legislature has explicitly created one. (*See* Resp. 4:3–4, ECF No. 15); (MTD 6:25–27). Nonetheless, the Court still considers Plaintiff's claims of cruel and unusual punishment through its analysis of deliberate indifference under the Eighth Amendment to the U.S. Constitution.

Qualified immunity shields public officials from liability under the deliberate indifference standard "unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Horton*, 915 F.3d at 599 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity "operates 'to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful.'" *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508, 2515, 153 L. Ed. 2d 666 (2002) (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001) *receded from on other grounds by Pearson v. Callahan*, 555 U.S. 223, 235 (2009)). To determine whether a public official is entitled to qualified immunity, a court must assess: "(1) whether the [official's] conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the incident." *Castro*, 833 F.3d at 1066 (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

Two principles guide courts on how to interpret the clearly established law inquiry within the context of deliberate indifference. First, courts must not define clearly established law with a high level of generality. *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). A right is clearly established when "a legal principle [had] a sufficiently clear foundation in then-existing precedent." *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018). The rule must be settled, meaning "it is dictated by 'controlling authority' or 'a robust 'consensus of cases of persuasive authority,''" *Id.* at 589–90 (quoting *al-Kidd*, 563 U.S. at 741–42). More than merely being "suggested by then-existing precedent," the rule "must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.* at 590 (citing *Reichle v. Howards*, 566 U.S. 658, 666 (2012). The opposite would mean "the rule is not one that 'every reasonable official' would know." *Id.* (quoting *Reichle*, 566 U.S. at 664).

Second, the Ninth Circuit has recognized that deliberate indifference claims rely on a subjective test, which is at odds with the objective qualified immunity test. *Horton*, 915 F.3d at 600. Despite this, when analyzing deliberate indifference within the lens of qualified

immunity, the Court must use an objective-based test. *Id.* Thus, Plaintiff must show that, given the available precedent at the time Kelley struck him with the baseball bat, a reasonable official, knowing what Officer Godecki knew, would have comprehended that failing to secure recreational equipment presented a substantial risk of harm to Plaintiff, and that the failure to act was unconstitutional. *See Horton*, 915 F.3d at 600.

An inmate has a clearly established constitutional right not to be harmed by other inmates. *See Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1067 (9th Cir. 2016) (citing *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)) ("[A] right is clearly established when the 'contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right. The 'contours' of [Appellant's] right were [her] right to be free from violence at the hands of other inmates." (internal citations omitted)). Courts do not need a list of every way an inmate may harm another to determine when a reasonable official would understand her actions violated an inmate's right. *Id.* at 1066. Similarly, an official may be liable under the Eighth Amendment without an affirmative act causing the alleged harm; it is sufficient for the official to know "that inmates face a substantial risk of serious harm and disregard[] that risk by failing to take reasonable measures to abate it." *Clem v. Lomeli*, 566 F.3d 1177, 1182 (9th Cir. 2009) (quoting *Farmer*, 511 U.S. at 847).

Here, Plaintiff has plead enough facts to find that Defendants violated Plaintiff's right against cruel and unusual punishment. As discussed above, under the Eighth Amendment's Cruel and Unusual Punishment Clause, Plaintiff has a constitutionally protected right against being harmed by other inmates. *Castro*, 833 F.3d at 1067. Plaintiff sufficiently pleads that another inmate, Kelley, harmed him with a baseball bat, and that the baseball bat was accessible to Kelley because Defendants failed to secure it. (Compl. ¶¶ 28–31, 41). Further, Plaintiff alleges that Defendants knew an unsecured baseball bat could be used as a weapon. (Compl. ¶ 60). Although Plaintiff did not specifically allege the named defendants

1 "disregarded an excessive risk" to Plaintiff's safety, he still plead that Defendants knew the bat could be used as a weapon yet failed to secure it, indicating that by not securing it, they disregarded an excessive risk. (*See id.*).  As such, Plaintiff has plead facts sufficiently to show that the Defendants violated Plaintiff's constitutional right by not protecting him against harm by other inmates.

Second, Plaintiff sufficiently claims that Defendants acted under color of state law when the alleged violation occurred by alleging that they were acting in the course of their official duties when the incident occurred.  Thus, Defendants committed their actions under color of state law. *See Marks*, 785 F.2d at 1420 (explaining that a public official acts under color of state law when she acts "in the course of [her] official duties when the alleged incident occurred").

Next, the Court turns to whether the right not to be harmed by other inmates was clearly established.  The holding in *Castro* makes it apparent that this right was clearly established at the time of the alleged violation. *Castro*, 833 F.3d at 1067; *see also Wesby*, 138 S. Ct. at 589–90 (explaining that a rule is clearly established when "a legal principle [had] a sufficiently clear foundation in then-existing precedent").  Thus, given the holding in *Castro*, promulgating that an inmate has a constitutional right against being harmed by other inmates, was clearly established at the time Kelley struck him with the baseball bat, a reasonable official, knowing what Officer Godecki knew, would have comprehended that failing to secure recreational equipment presented a substantial risk of harm to Plaintiff such that the failure to act was unconstitutional.  As such, the Court finds that qualified immunity does not protect Defendants because Plaintiff adequately alleged that Defendants violated a clearly established constitutional right.  Thus, Plaintiff's deliberate indifference claim survives the Motion to Dismiss.

//

### b. Equal Protection Claim

In his complaint, Plaintiff contends that all Defendants, except Godecki, "deliberately failed to afford [him] the same protection" as other inmates against prisoners who had unrestricted access to potential weapons, such as a baseball bat, because of his minimum security custody status. (Compl. ¶ 56). Plaintiff claims Defendants knew Plaintiff was entitled to the same protection as other inmates despite his custody status; he avers there was no rational basis for allowing inmates unrestricted access to recreation equipment that could be used as a weapon. (*Id.* ¶ 57). In their motion, Defendants argue Plaintiff cannot show he is part of a protected class or that a policy was created with discriminatory intent or purpose. (MTD 7:10–12). They further contend inmates are not members of a protected class by having differing custody statuses. (*Id.* 7:17–18) (citing *Webber v. Crabtree*, 158 F.3d 460, 461 (9th Cir. 1998)). Additionally, Defendants assert that Plaintiff failed to claim he was treated differently than other inmates of the same custody status. (*Id.* 7:27–8:3)

"To state a § 1983 claim for violation of the Equal Protection Clause 'a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class.'" *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005). To conduct an equal protection analysis, a plaintiff must first "identify the [defendant's] classification of groups." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995), *as amended on denial of reh'g and reh'g en banc* (Dec. 29, 1995) (internal citations omitted). To do so, he may show defendants applied the law in a discriminatory way or "impose[d] different burdens on different classes of people." *Id.* Next, plaintiff must identify the appropriate level of scrutiny with which to analyze his claims. *Id.* After establishing the classification and level of scrutiny, "it is necessary to identify a 'similarly situated' class against which the plaintiff's class can be compared." *Id.*

A plaintiff may also allege that she is a "class of one" to implicate equal protection. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  To succeed, a plaintiff must show Defendants "intentionally treated [her] differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.*

Here, equal protection is not implicated because Plaintiff fails to allege he is a member of a protected class.  In his response to Defendants' motion, Plaintiff argues he does not have to show he is a member of a protected class to prove his claim. (Resp. to MTD 5:3–4).  However, Plaintiff's argument is incorrect because he must sufficiently allege that he is a member of a protected class to sustain an equal protection claim. *Freeman*, 68 F.3d at 1187.  As a result, the Court dismisses Plaintiff's equal protection claim, but without prejudice because he may be able to cure the deficiency in his Complaint by properly alleging membership in a protected class.

**B.  State Law Claims[3]**

Plaintiff additionally alleges three state law claims against Defendants in their individual capacities, specifically: (1) negligence; (2) negligent hiring and supervision; and (3) gross negligence. (Compl. ¶¶ 62–73).  In their Motion, Defendants first argue that § 1983 only provides a cause of action for violations of federal law, and that supplemental jurisdiction does not apply here because § 1367 does not abrogate state sovereign immunity.[4] (MTD 5:23–27), 5:3–5) (citing *Stanley v. Trustees of Cal. State Univ.*, 433 F.3d 1129, 1133-34 (9th Cir. 2006)).  Further, Defendants argue that they are entitled discretionary immunity on Plaintiff's state law claims. (MTD 15:1–17:1).

//

---

[4]Although § 1367 does not abrogate state sovereign immunity, the Eleventh Amendment does not bar suits against state officials in their individual capacities. *Pena*, 976 F.2d at 473.

### i. Supplemental Jurisdiction

As an initial matter, federal courts have original jurisdiction over civil actions arising under federal law. 28 U.S.C. § 1331. However, courts may exercise supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367 if said claims are identical to Plaintiff's federal claims and based on the same factual allegations as the federal claims. *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1089 n.4 (9th Cir. 2000). This occurs when state and federal law claims "'derive from a common nucleus of operative fact' and are such that a plaintiff 'would ordinarily be expected to try them in one judicial proceeding.'" *Trustees of Constr. Indus. & Laborers Health & Welfare Tr. v. Desert Valley Landscape & Maint.*, Inc., 333 F.3d 923, 925 (9th Cir. 2003).

Here, the Court will exercise supplemental jurisdiction over Plaintiff's state law claims because all of his claims derive from a common nucleus of operative fact. For example, just like in his deliberate indifference and equal protection claims, Plaintiff's tort claims allege that Defendants failed to secure recreational equipment, or similarly, to supervise employees regarding how to secure the recreational equipment. Thus, Plaintiff's state and federal claims derive from a common nucleus of operative fact and exerting supplemental jurisdiction over Plaintiff's state law claims is appropriate.

### ii. Discretionary Immunity

The Court now turns to an analysis of Defendants' discretionary immunity. NRS § 41.032(2) bars liability against public officials when they exercise or perform, or fail to exercise or perform, a discretionary function or duty. Discretionary immunity shields public officials from liability if their actions are discretionary, meaning they "(1) involve an element of individual judgment or choice and (2) be based on considerations of social, economic, or political policy." *Martinez v. Maruszczak*, 123 Nev. 433, 446–47 (2007). Thus, decisions requiring "analysis of government policy concerns" are afforded discretionary immunity. *Id.* at

447  In analyzing discretionary immunity, courts "must assess cases on their facts, keeping in mind Congress' purpose in enacting the exception: to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id*. at 446 (citation omitted).

Defendants broadly allege that they are immune to *any* state tort, pursuant to NRS § 41.031(1) because the decision to create and implement a policy is the product of personal deliberation and policy considerations. (MTD 15:26–27, 17:20–22).  Plaintiff, however, alleges specific acts of negligence, gross negligence, and negligent hiring that appear unrelated to Defendants' decision to implement a policy. (*See* Compl. ¶ 63) (alleging that Defendants "fail[ed] to monitor and secure recreational equipment such as baseball bats which they knew could foreseeably result in prisoners accessing baseball bats and bringing harm to other prisoners.").  Given that Plaintiff does not allege a violation of social, economic, or political policy in its Complaint, the Court discusses each claim in turn.

### 1. Negligence and Gross Negligence

Plaintiff alleges that Defendants negligently failed to secure or monitor recreational equipment, such as baseball bats, which they knew could foreseeably result in prisoners accessing baseball bats and ultimately bring harm to other prisoners and/or staff. (Compl. ¶ 63). Additionally, Plaintiff alleges that Defendants were grossly negligent by similarly failing to secure equipment and by responding to Plaintiff's grievance that higher security was unnecessary due to his minimum custody status. (*Id*. ¶ 70).

As to the first element, the Court finds that Defendants made a discretionary decision in deciding not to secure or monitor the recreational equipment.  "A discretionary act 'requires the exercise of personal deliberation, decision and judgment,' while a ministerial act is 'performed by an individual in a prescribed legal manner . . . without regard to, or the exercise of, the judgment of the individual' and which 'envisions direct adherence to a governing rule or

standard with compulsory result.'" *Carey v. Nev. Gaming Control Bd.*, 279 F.3d 873, 878 (9th Cir. 2002) (citing *Foster v. Washoe Cty.*, 964 P.2d 788, 792 (Nev. 1998)).  The Ninth Circuit, in *Carey*, determined that the officer's arrest was a discretionary act because "the course of action . . . was not a prescribed act; rather it was an act resulting from the exercise of [the officer's] own discretion." *Id.*  Likewise, Defendants' actions were a result of their own discretion.  Plaintiff has alleged sufficient facts to demonstrate that Defendants were aware of violent acts and the readily available tools at LCC, and further, that their failure to secure such tools was discretionary.

However, the alleged Policy does not appear to be based on considerations of social, economic, or political policy. *Martinez*, 123 Nev. at 446–47.  Immunity applies under this second criterion only if "the injury-producing conduct is an integral part of governmental policy-making or planning, if the imposition of liability might jeopardize the quality of the governmental process, or if the legislative or executive branch's power or responsibility would be usurped." *Id*.  Here, Defendants broadly argue that "the decision to create and implement a policy is the product [of] personal deliberation and policy considerations." (MTD 17:20–22).  Defendants further contend that "[i]mposing liability in this matter would usurp the Board of Prison Commissioners' power and have a chilling effect on future deliberations." (*Id.* 17:24–25).  Defendants, however, do not further elaborate on how the Policy (*i.e.*, not securing recreational equipment such as baseball bats at minimum custody facilities), would usurp the Commissioners' power.  Given that the second element is not met, the Court denies Defendants' Motion to Dismiss as to Plaintiff's negligence and gross negligence claims.

### 2. Negligent Hiring, Training, Selection, and Supervision

Plaintiff alleges that Defendants had a mandatory duty to properly regulate, train, test, and supervise all officers and personnel, and subsequently breached their duty by failing to train and supervise their officers. (Compl. ¶¶ 66–67).  Defendants maintain Plaintiff failed to

plead sufficient facts showing the named defendants failed to properly supervise or train any Nevada Department of Corrections ("NDOC") employee. (MTD 8:19–21).

Here, Plaintiff does not sufficiently plead allegations that Defendants negligently hired, trained, selected, or supervised their employees. Plaintiff merely alleges conclusory facts that alone are not enough to overcome the Motion to Dismiss legal standard. Thus, the Court grants Defendants' Motion to Dismiss as to Plaintiff's negligent hiring, training, selection, and supervision claim with leave to amend because it is possible Plaintiff may cure this deficiency by alleging more specific facts.

## IV.  CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, (ECF No. 14), is **GRANTED in part and DENIED in part**. Plaintiff's claim against state officials in their official capacities is dismissed with prejudice, and Plaintiff's equal protection claim and negligent hiring, training, selection, and supervision claim are dismissed without prejudice and with leave to amend.

**IT IS FURTHER ORDERED** that if Plaintiff elects to amend his claims that are dismissed without prejudice, Plaintiff shall have twenty-one days from the date of this Order to do so.

Dated this  30  day of September, 2021.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT